Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000431
26-FEB-2016
09:13 AM

NOS. CAAP-14-0000431 and CAAP-15-0000045

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

NO. CAAP-14-0000431

ASSOCIATION OF APARTMENT OWNERS OF CENTURY CENTER, INC.,
BY AND THROUGH ITS BOARD OF DIRECTORS,
Plaintiff-Counterclaim Defendant-Appellee,
v.
YOUNG JIN AN, AMBROSIA-SPA INC.,
JOHN DOES 1-20, JANE DOES 1-20, DOE PARTNERSHIPS 1-20,
DOE CORPORATIONS 1-20, and DOE ENTITIES 1-20,
Defendants-Counterclaimants-Appellants

————————

NO. CAAP-15-0000045

ASSOCIATION OF APARTMENT OWNERS OF CENTURY CENTER, INC.,
BY AND THROUGH ITS BOARD OF DIRECTORS,
Plaintiff-Counterclaim Defendant-Appellant,
v.
YOUNG JIN AN aka YOUNG JA KIM, AMBROSIA-SPA INC.,
JOHN DOES 1-20, JANE DOES 1-20, DOE PARTNERSHIPS 1-20,
DOE CORPORATIONS 1-20, and DOE ENTITIES 1-20,
Defendants-Counterclaimants-Appellees

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CIVIL CASE NO. 1RC13-1-4367)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

In appellate case no. CAAP-14-0000431, Defendants-Counterclaimants-Appellants Young Jin An aka Young Ja Kim (**An**) and Ambrosia-Spa Inc.(together, **Appellants**) appeal from the

following entered in the District Court of the First Circuit[1] (**district court**):

    (1) the February 4, 2014 "Writ of Possession";

    (2) the February 4, 2014 "Judgment for Possession";

    (3) the January 28, 2014 denial of Appellants' "Motion For Rehearing And/Or Reconsideration of the Denial of [Appellants'] Motion to Dismiss For Lack of Subject Matter Jurisdiction" (**Denial of Motion for Rehearing and/or Reconsideration**);

    (4) the January 31, 2014 "Order Denying [Appellants'] Renewed Motion to Dismiss For Lack of Subject Matter Jurisdiction, Filed January 15, 2014" (**Order Denying Renewed Motion to Dismiss**); and

    (5) the October 10, 2013 "Order Denying [Appellants'] Motion to Dismiss For Lack of Subject Matter Jurisdiction, Filed August 14, 2013" (**Order Denying Motion to Dismiss**).

Appellants contend the district court erred "in denying [Appellants'] motion to dismiss and renewed motion to dismiss, and in adjudicating the merits of the case and entering a judgment for possession and writ of possession in violation of [Hawaii Revised Statutes (**HRS**) § 604-5(d) (Supp. 2015)]."

In appellate case no. CAAP-15-0000045, Plaintiff-Counterclaim Defendant-Appellant Association of Apartment Owners of Century Center, Inc. (**AOAO**) appeals from the "Order Denying [AOAO's] Motion For Relief From Order Granting [Appellants'] Motion to Set Supersedeas Bond for a Stay Pending Appeal, Filed March 7, 2014, Filed October 20, 2014," entered on December 30, 2014 in the district court.[2]

The AOAO contends the district court erred in denying the their "Motion For Relief From Order Granting [Appellants'] Motion to Set Supersedeas Bond for a Stay Pending Appeal, Filed March 7, 2014," filed October 20, 2014 "where the record clearly

---

[1] The Honorable Hilary B. Gangnes presided over the Order Denying Motion to Dismiss, Denial of Motion for Rehearing and/or Reconsideration, and Order Denying Renewed Motion to Dismiss. The Honorable Melanie May presided over the Writ of Possession and Judgment for Possession.

[2] The Honorable Gerald H. Kibe presided over the Motion for Relief.

reflects illegal activity is being committed within Unit 116 in violation of the governing documents . . . ."

## I. BACKGROUND

On December 7, 2010, the Land Court of the State of Hawai'i (**land court**) recorded an Agreement of Sale between Lisa Yongsonyi Nose (**Nose**) and An of the leasehold interest in unit 116 of the condominium project known as Century Center (**Property**) for which An paid $320,000. According to An, after she acquired the Property, the managing agent for the AOAO, Hawaiiana Management Company (**Hawaiiana Management**) failed to transmit monthly maintenance fee assessment statements to An, "which resulted in delinquent payments to the AOAO."

An alleged that she reached an agreement with the AOAO in June 2012 "to pay down the delinquent assessments over a twelve month period and to remain current on the monthly maintenance fee assessments." In November 2012, An submitted a "Change of Address Form for Billing & Correspondence" to Hawaiiana Management. Even after the agreement and the change of address form, Hawaiiana Management still did not transmit monthly maintenance fee assessment statements on a regular basis to An, "which caused [An's] payments to be made late." At some point after November 2012, An went in person to Hawaiiana Management to have the statements printed, after which An made "the settlement payments and the monthly maintenance fee payments in the amounts set forth in the monthly statements."

According to An, and without her knowledge, the AOAO was charging a 5% "late fee" of the total amount outstanding. An additionally alleged, "the AOAO was charging [her] significant amounts of attorneys' fees. Neither the late fees nor the attorneys' fees were shown on the monthly statements delivered to [An]."

The fees between July 2012 and May 2013 totaled $15,623.86. An paid off this balance by April 2013. However, the AOAO asserted that An was still delinquent in the amount of $41,129.62 due to the late charges and legal fees. Based on the fees owed, the AOAO noticed a foreclosure sale of the Property. An stated she "spoke to [Hawaiiana Management] regarding the

3

notice of foreclosure sale of the [Property] and was told that as long [she] was making [her] settlement payments and monthly payments, the foreclosure sale would not occur." Despite An's stated understanding that the foreclosure sale would not occur, the foreclosure sale went through and the AOAO purchased the Property on May 13, 2013 and the quitclaim deed was recorded on May 15, 2013.

On June 18, 2013, the AOAO filed a complaint for eviction against Appellants in the district court. Appellants filed their answer on August 9, 2013, which included the defense that the district court lacked jurisdiction over the case pursuant to HRS § 604-5(d). Appellants filed with their answer a counterclaim against the AOAO including, among other claims, wrongful foreclosure and quiet title claims.

On August 14, 2013, Appellants filed a "Motion to Dismiss For Lack of Subject Matter Jurisdiction" based on HRS § 604-5(d). The district court held a hearing on the motion to dismiss on September 30, 2013. On October 10, 2013, the district court entered its Order Denying Motion to Dismiss.

On February 4, 2014, the district court entered a Judgment for Possession and Writ of Possession in favor of the AOAO.

On February 12, 2014, Appellants filed their notice of appeal in case no. CAAP-14-0000431. On January 27, 2015, AOAO filed their notice of appeal in case no. CAAP-15-0000045. On October 1, 2015, by order of this court, appellate case nos. CAAP-14-000431 and CAAP-15-0000045 were consolidated under no. CAAP-14-0000431.

## II. STANDARD OF REVIEW

**Subject Matter Jurisdiction**

"The existence of subject matter jurisdiction is a question of law that is reviewable de novo under the right/wrong standard." U.S. Bank Nat. Ass'n v. Castro, 131 Hawaiʻi 28, 34, 313 P.3d 717, 723 (2013) (internal quotation marks and emphasis omitted) (citing Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 98, 110 P.3d 1042, 1045 (2005)).

## III.   DISCUSSION

### District Court Jurisdiction

Appellants contend the district court lacked jurisdiction over the eviction action under HRS § 604-5(d), which provides:

> §604-5 Civil jurisdiction.
>
> .   .   .   .
>
> (d) The district courts shall not have cognizance of real actions, nor actions in which the title to real estate comes in question, nor actions for libel, slander, defamation of character, malicious prosecution, false imprisonment, breach of promise of marriage, or seduction; nor shall they have power to appoint referees in any cause.

Where a defendant asserts HRS § 604-5(d) as a defense to jurisdiction of the district court, the defendant must raise the defense in a written answer or motion, and must attach an affidavit.  Deutsche Bank Nat. Trust Co. v. Peelua, 126 Hawai'i 32, 36, 265 P.3d 1128, 1132 (2011).  The plain language of District Court Rules of Civil Procedure (**DCRCP**) Rule 12.1, requires that the affidavit set forth "the source, nature and extent of the title claimed by defendant to the land in question, and such further particulars as shall fully apprise the court of the nature of defendant's claim."  Appellants argue that because they satisfied the requirements of DCRCP Rule 12.1, the district court should have dismissed the action.

Appellants rely on Peelua for their contention that the district court erred in denying their motion to dismiss based on lack of subject matter jurisdiction.

In Peelua, the Hawai'i Supreme Court explained,

> Pursuant to DCRCP Rule 12.1, where a defendant seeks to assert, as a defense to the jurisdiction of a district court, that the action is one in which title to real estate will come into question, the defendant must raise such a defense in a written answer or written motion, and must attach an affidavit thereto.

Id. at 36, 265 P.3d at 1132.  "Under the plain language of Rule 12.1, an affidavit that raises a defense to the court's jurisdiction must set forth 'the source, nature, and extent of the title claimed by defendant' and 'further particulars' sufficient to 'fully apprise the court of the nature of defendant's claim.'"  Id.  The supreme court clarified that

5

"further particulars" in this context "suggests that the affidavit must include some details or specificity regarding the nature of defendant's claim." Id. at 37, 265 P.3d at 1133. The supreme court noted that a declaration that merely asserts that title is at issue fails to provide "the source, nature, and extent of the [the] claim." Id. at 37-38, 265 P.3d at 1133-34 (internal quotation marks and citation omitted).

In support of his jurisdictional defense, the defendant in Peelua attached an affidavit to the motion to dismiss, which provided:

> 5. *I am the owner of the Property identified in the Complaint filed in this matter.* Because of time constraints, I cannot file a copy of my Deed to the property with this affidavit, but I will furnish a copy of the Deed as soon as I can.
>
> 6. The Property identified in the Complaint *consists of lands which have been owned by Respondent's family for generations, going back to the time of the Great Mahele.*
>
> . . . .
>
> 8. The Property has passed down through my family over time, and it was eventually *deeded to me by my family.*
>
> [. . . .].
>
> 10. . . . . I was defrauded, duped, coerced and tricked into engaging in transaction [sic] which involve the Property in the Complaint.

Peeula, 126 Hawai' at 35, 265 P.3d at 1131 (brackets omitted). The supreme court observed that the defendant "assert[ed] in his affidavit that he has a deed to the property. However, [defendant's] affidavit does not describe the contents of the deed or the type of deed he acquired." Id. at 38, 265 P.3d at 1134. The supreme court noted that "to fully apprise the court, a defendant would need to provide some details regarding the basis for the title." Id.

More recently, the supreme court in Castro, held that a defendant did not sufficiently apprise the court of the source, nature, and extent of her claim to title where her assertion "that she is 'informed and believes' that 'U.S. Bank may not own her note and mortgage and may not be able to foreclose due to defects in transfer of the loan documents,'" was too speculative to satisfy DCRCP Rule 12.1. Id. at 38, 313 P.3d at 727 (emphasis

omitted). The supreme court also held that the defendant's declaration that "'it is believed' that a 'securitization expert report will establish a break in the chain of title of the loan documents' . . . does not establish how or whether the manner in which the Note and Mortgage were assigned to U.S. Bank affects [defendant's] claim of title to the Property.'" Id. (emphasis and ellipsis omitted). Finally, the supreme court noted, "[defendant's] claim that the foreclosure was wrongful because she was denied a loan modification is also stated in a vague and conclusory manner. Her declaration does not establish how the lack of a loan modification would affect her claim of title." Id. at 39, 313 P.3d at 728.

In an unreported case, Fed. Nat. Mortg. Ass'n v. Brown, No. CAAP-11-0000572 (App. May 19, 2014) (SDO), this court held that a defendant had provided enough detail in his declaration,[3]

---

[3] The defendant's declaration stated:

> 12. After closing the loan, due to a disability, it became very difficult for me to make my monthly payments. Thus, in July of 2009, Plaintiff Fannie Mae and IndyMac invited me to participate in [Home Affordable Modification Program (HAMP)].

> 13. On June 19, 2009, I accepted Fannie Mae and IndyMac's offer to participate in HAMP, and entered into a [Trial Period Plan (TPP)], and provided them with all of the required documentation. I was promised therein that as long as I complied with the TPP, my property would not be foreclosed upon and my mortgage would be permanently modified upon making the three monthly payments of $2,543.80 required under the TPP.

> 14. Therefore, I submitted my first and second payments under the TPP in the amount of $2,543.80, which were accepted. I submitted my third payment in August 2009, in the amount of $2,543.80.

> 15. Despite my timely submission of that payment and despite my full compliance with the terms of the TPP, One West [sic] Bank returned my check to me along with a letter dated August 27, 2009, strangely explaining that "the amount received does not represent the total amount due at this time."

> . . . .

> 17. [On September 16, 2009] OneWest Bank recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale in the Bureau of Conveyances, initiating a nonjudicial foreclosure upon [the Property] in breach of the TPP.

> . . . .

(continued...)

7

attached deed, and mortgage from which we could deduce the source, nature, and extent of the title claimed. Id. at 1. This court explained, "The Mortgage reflects that [defendant] held title as Tenant in Severalty, and the Quitclaim Apartment Deed reflects that [defendant] then conveyed his interest in the Property to himself and his wife as Tenants by the Entirety." Id. at 5. The defendant's declaration in Brown

> also sets forth with particularity . . . the basis for his claim challenging Fannie Mae's assertion of title to the Property such as to apprise the district court how his allegation bears on the question of title. His declaration raised the specific contention that the non-judicial foreclosure was improper because he and IndyMac had entered into the TPP under which IndyMac allegedly agreed not to pursue foreclosure.

Id. at 8 (internal citation omitted).

In Appellants' answer to the AOAO's complaint, Appellants asserted, "Pursuant to [HRS] § 604-5(d), the district court lacks jurisdiction over this case because the action is a real action or one in which the title to real estate is involved. Pursuant to the [DCRCP] Rule 12.1, the Affidavit of [An] is attached." An's affidavit stated:

> 2.  I acquired title to the [Property] from Lisa Yongsonyi Nose by virtue of an Agreement of Sale dated December 7, 2010 and recorded as Land Court Document No. 4028097. The purchase price for the Real Property was $320,000.
>
> 3.  I am the sole owner of the equitable interests in the [Property].
>
> 4.  My interest in the [Property] was wrongfully foreclosed upon by the [AOAO], as set forth in detail in the Counterclaim filed concurrently herewith.
>
> 5.  From and after my acquisition of the [Property, Hawaiiana Management], the managing agent of the [Property] for [the AOAO], failed and/or refused to transmit all of the monthly statements to me, which resulted in delinquent payments to the AOAO.
>
> 6.  In or about June of 2012, I reached an agreement

---

[3](...continued)

> 20. Because I accepted the terms of its and Fannie Mae's offer to modify my loan through a TPP under the federal HAMP program, because I complied with all of the requirements of that TPP, and because Fannie Mae and OneWest Bank breached the terms of that plan, OneWest Bank was estopped from proceeding with foreclosure upon my home.

Brown, SDO at 4 (ellipses and some brackets omitted).

with the AOAO to pay down the delinquent assessments over a twelve month period and to remain current on the monthly maintenance fee assessments.

7. Even after this agreement, [the AOAO's] agent, Hawaiiana [Management], did not send me monthly statements on a regular basis, which caused payments to be made late.

8. In November 2012, I executed a Hawaiiana Change of Address Form for Billing & Correspondence ("Change of Address Form").

9. Even after submitting the Change of Address form, Hawaiiana [Management] did not send me the monthly maintenance fee assessment statements. I had to go to Hawaiiana [Management] and have them printed for me. Thereafter, I continued to make the settlement payments and the monthly maintenance fee payments in the amounts set forth in the monthly statements.

10. Unbeknownst to me and without notice, the AOAO was charging me a late fee each month in the amount of 5% of the total amount claimed to be outstanding. Also unbeknownst to me, the AOAO was charging me significant amounts of attorneys' fees. Neither the late fees nor the attorneys' fees were shown on the monthly statements delivered to me.

11. Without my knowledge, the AOAO applied approximately $15,623.86 of my Settlement Payments and/or Monthly Assessment Payments to late charges which purportedly accrued from July 2012 to May 2013.

12. As of April 2013, I made all of the Settlement Payments and all or a sufficient number of Monthly Assessment Payments to keep current, but for the AOAO's secret assessment of illegal and unenforceable late charges, as well as, legal fees and costs related thereto.

13. In spite of all the payments I made, the AOAO noticed a foreclosure sale of the [Property] and alleged that I was delinquent in the amount of $41,129.62 as of April.

14. I spoke to Hawaiiana [Management] regarding the notice of foreclosure sale of the [Property] and was told that as long as I was making my settlement payments and monthly payments, the foreclosure sale would not occur.

15. Because I was current on the monthly settlement payments and monthly maintenance fee payments set forth in the statements sent to me, I understood that the foreclosure sale would not occur.

16. Unbeknownst to me, the sale went forward and the AOAO claimed to be the highest bidder for the [Property] in the amount of $1.

17. By counterclaim attached hereto, I am challenging the AOAO's wrongful foreclosure and the AOAO's claim of title to the [Property].

18. I dispute that [the AOAO's] alleged title to the [Property] is superior to my title to the [Property].

An did not attach the Agreement of Sale to her affidavit nor does An attach an assignment of lease for the Property. However, attached to the AOAO's complaint was the

9

AOAO's Quitclaim Assignment of Lease, which documented the transfer of interest in the Property.[4]  Exhibit A to the Quitclaim Assignment of Lease shows that on April 2, 2009, the land court recorded the interest in the Property as assigned to Nose as Tenant in Severalty.  It also shows that on December 7, 2010, the land court recorded the Agreement of Sale of the Property from Nose to An.  Additionally, An does set forth with particularity the basis for her claim challenging the AOAO's assertion of title to the Property, that the AOAO wrongfully foreclosed on the Property because An had completed the payments due to the AOAO under the Settlement Agreement.  Unlike Peelua and Castro, An's affidavit provides bases for this court to determine the nature of the claim that are not speculative and are not conclusory.  The Quitclaim Assignment of Lease attached to the AOAO's complaint along with An's affidavit provided sufficient information to apprise this court of the source, nature, and extent of the title An claims to the Property.  See DCRCP Rule 12.1.

Because An sufficiently set forth the source, nature, and extent of the title claimed and such further particulars apprising this court of the nature of her claim under DCRCP Rule 12.1, the district court erred in its Order Denying Motion to Dismiss for lack of subject matter jurisdiction under HRS § 604-5(d).

## IV.  CONCLUSION

Therefore, we vacate the following entered in the District Court of the First Circuit:

(1)  the February 4, 2014 "Writ of Possession";

(2)  the February 4, 2014 "Judgment for Possession";

(3)  the January 28, 2014 denial of Defendants Young Ja

---

[4] "Once a defendant establishes that title is in question, a court cannot consider evidence or arguments in rebuttal of the defendant's claim to title, or evidence in support of the plaintiff's claim to a superior basis of title because that would be for the circuit court to decide." Peelua, 126 Hawaiʻi at 39, 265 P.3d at 1135.  However, where a plaintiff attaches a quitclaim deed to its complaint, a court may consider it in determining a defendant's assertion that the district court lacks jurisdiction under HRS § 604-5(d).  Id. at 39, 265 P.3d at 1135 ("[The plaintiff] was required to plead entitlement to possession of the Property and could appropriately attach a copy of its quitclaim deed in support of its claimed ownership.").

Kim and Ambrosia-Spa Inc.'s "Motion for Rehearing And/Or Reconsideration of the Denial of Defendants Young Ja Kim and Ambrosia-Spa Inc.'s February 18, 2016 Motion to Dismiss for Lack of Subject Matter Jurisdiction";

(4) the January 31, 2014 "Order Denying Defendants Young Ja Kim and Ambrosia-SPA Inc.'s Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction, Filed January 15, 2014"; and

(5) the October 10, 2013 "Order Denying Defendants Young Ja Kim and Ambrosia-Spa Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, Filed August 14, 2013."

This case is remanded to the district court with instructions to dismiss this case for lack of jurisdiction. Other points raised in these appeals are therefore moot.

DATED:  Honolulu, Hawai'i, February 26, 2016.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
(Dubin Law Offices)
for Defendants-Counterclaimants-
Appellants/Appellees.

R. Laree McGuire
Jamila E. Jarmon
(Porter McGuire Kiakona & Chow)
for Plaintiff-Counterclaim
Defendant-Appellee/Appellant.

Chief Judge

Associate Judge

Associate Judge

11